892 F.2d 1046
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clive MOSS and Casa Grande Radiology, a professional
corporation, Plaintiffs-Appellants,
v.
CASA GRANDE COMMUNITY HOSPITAL, INC., dba Hoemako Hospital,
an Arizona non-profit corporation, Robert C. Benjamin,
Combined Health Resources, an Arizona non-profit
corporation, James Pate, William H. Ford, the Medical Staff
of Case Grande Community Hospital, Inc., James R. Doyle,
Manual M.A. Guerrero, III, Meheranz Irani, Rjagopalan Ravi,
Rangit Sood, Sunrad Radiology, Ltd., an Arizona corporation,
Donald J. Jacobson and Carl G. Hoffman, Defendants-Appellees.
 Nos. 87-1632, 87-2367 and 87-2537.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 12, 1988.
Decided Jan. 2, 1990.
 
 1
 Before EUGENE A. WRIGHT and POOLE, Circuit Judges, and HARRY L. HUPP,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Clive Moss maintained an exclusive services contract with defendant Casa Grande Community Hospital, Inc. ("Casa Grande"), terminable on 90 days notice. By letter dated February 11, 1983, Casa Grande notified Moss that it was terminating his contract, effective May 6, 1983. Moss alleges that his contract was terminated because he "blew the whistle" on (and refused to assist in) the performance of an allegedly dangerous surgical procedure known as a translumbar aortography ("TLA").
 
 
 4
 Moss' first amended complaint takes a shotgun approach in establishing liability, alleging causes of action against all defendants for, among other things, (1) violation of section 1 of the Sherman Act, 15 U.S.C. § 1, (2) violation of his constitutional rights under 42 U.S.C. § 1983, (3) wrongful discharge, and (4) intentional interference with contractual relations.
 
 
 5
 The district court granted summary judgment in favor of defendants on each of these claims, and Moss appeals. Defendants Ravi and Sood cross-appeal the district court's denial of their fee applications.
 
 I. Standard of Review: Summary Judgment
 
 6
 On review of a grant of summary judgment, this court functions in the same manner as the district court. We must determine de novo whether in viewing the evidence in the light most favorable to Dr. Moss, the defendants have demonstrated that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.2d 346, 350 (9th Cir.1988).
 
 II. Antitrust Claims
 
 7
 Moss alleges that defendants have violated Section 1 of the Sherman Act by conspiring to deny his right to practice at Casa Grande Community Hospital (also known as Hoemako Hospital), and by tying Casa Grande radiology services to other services provided by Casa Grande.
 
 A. Tying Arrangement
 
 8
 Plaintiff alleges that Casa Grande maintains an illegal tying arrangement in that the exclusive radiology contract awarded to Sunrad Radiology after he was terminated forces patients to use Casa Grande's radiologist. The district court granted summary judgment in favor of Casa Grande on the ground that plaintiff had failed to show anti-competitive animus or adverse effect upon competition. Earlier the district judge had found that the market power issue should go to the jury, and denied summary judgment. But he reconsidered the summary judgment motion post-Celotex and granted the motion after finding no evidence of animus or effect on competition. Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) (defining evidentiary burden on party defending summary judgment motion).
 
 
 9
 The order granting summary judgment is slightly confusing in that it states that the per se rule applies, yet goes on to analyze the case on grounds associated with the rule of reason. Plaintiff argues that the per se rule should apply, so that no showing of anti-competitive animus or adverse effect on competition is necessary to establish liability. He does not argue that defendants acted with anti-competitive animus, or that defendants' actions have had an adverse effect on competition. So, plaintiff's entire claim rests on whether or not the per se rule applies.
 
 
 10
 In the past, the Supreme Court has held that tying arrangements should be governed by the per se rule. Northern Pacific R.R. Co. v. United States, 356 U.S. 1, 5, 2 L.Ed.2d 545, 78 S.Ct. 514 (1958). However, in Jefferson Parish Hospital District No. 2. v. Hyde, 466 U.S. 2, 80 L.Ed.2d 2, 104 S.Ct. 1551 (1984), the Court abandoned former conventional wisdom and held that "[t]ying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made." Id. at 27. The Court in Hyde declined to apply the per se rule to a Section 1 claim brought by an anesthesiologist against a hospital maintaining an exclusive contract with a firm of anesthesiologists. The Court found that consumer lack of price or quantity consciousness would have no impact on their willingness or ability to go to another hospital. Id. at 28.
 
 
 11
 This case presents the same situation. The hospital's tying arrangement cannot force patients to purchase radiology services not otherwise desired. The rule of reason applies.
 
 
 12
 In Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir.1987), this court noted that:
 
 
 13
 In order to survive a motion for summary judgment in a Rule of Reason case, the antitrust plaintiff must produce evidence of
 
 
 14
 (1) an agreement among two or more persons or distinct business entities;
 
 
 15
 (2) which is intended to harm or unreasonably restrain competition; and
 
 
 16
 (3) which actually causes injury to competition.
 
 
 17
 The record does not contain any evidence to support a finding of intent to injure competition, or of actual injury to competition. Plaintiff does not contend otherwise. The summary judgment on this issue is affirmed.
 
 B. Group Boycott
 
 18
 Plaintiff alleges that the medical staff members of Casa Grande, and in particular defendants Ravi and Sood, conspired to exclude him from practice at Hoemako Hospital. Such concerted activity, plaintiff argues, constitutes a group boycott.
 
 
 19
 On June 3, 1986 the district court granted summary judgment in favor of Ravi and Sood on the grounds that defendants had alternative business reasons, as opposed to anticompetitive reasons, for opposing plaintiff's privileges, and that plaintiff had failed to make a sufficient showing that defendants had acted with conscious commitment to a common scheme. The latter ground was based upon Monsanto Co. v. Spray-Rite Serv. Co., 465 U.S. 752, 79 L.Ed.2d 775, 104 S.Ct. 1464 (1984), where the Court held:
 
 
 20
 [t]o permit the inference of concerted action on the basis of receiving complaints alone and thus to expose the defendant to treble damage liability would both inhibit management's exercise of its independent business judgment and emasculate the terms of the statute.
 
 
 21
 Id. at 764 (quoting Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 n. 2 (3d Cir.1980), cert. denied, 451 U.S. 911, 68 L.Ed.2d 300, 101 S.Ct. 1981 (1981)). Plaintiff does not quibble with the district court's holding in this respect (although he purports to appeal that ruling). Instead, he argues that the Medical Staff (named as a defendant) is a group, and that its actions, as a matter of law, constitute concerted action for the purposes of anti-trust law.
 
 
 22
 Moss' contention is based upon Weiss v. York Hosp., 745 F.2d 786, 814 (3d Cir.1984), cert. denied, 470 U.S. 1060, 84 L.Ed.2d 836, 105 S.Ct. 1777 (1985), where the court held that:
 
 
 23
 as a matter of law, the medical staff is a combination of individual doctors and therefore that any action taken by the medical staff satisfies the 'contract, combination, or conspiracy' requirement of section 1.
 
 
 24
 In Weiss, an osteopath sued the hospital, the medical staff, and individuals doctors for conspiring to refuse to admit osteopaths. The application process was controlled almost entirely by the medical staff, with the Medical Staff Executive Committee recommendation almost always followed by the hospital board in making admission decisions. Id. at 796 n. 14. The court found that the medical staff's action in recommending denial of the osteopath's application could constitute the necessary "contract, combination, or conspiracy" element of a section 1 violation, even though the individual defendants were found by the jury not to have conspired. Id. at 814.
 
 
 25
 The district court here accepted the holding in Weiss, and concluded that the actions of the Medical Staff were the actions of a combination within the meaning of the Sherman Act. However, it granted summary judgment in favor of defendants Ravi and Sood on the ground that their actions were consistent with legitimate business practices.
 
 
 26
 Moss argues that since the actions of the Medical Staff constitute concerted activity as a matter of law, and since the per se rule should apply to this case, the actions of the Medical Staff in terminating and later denying hospital privileges violate the Sherman Act as a matter of law. Once again Moss' argument hinges on the erroneous assumption that the per se rule of analysis applies.
 
 
 27
 Moss argues that the Medical Staff's actions constitute a group boycott, to which the per se rule has traditionally applied. As with tying arrangements, the Supreme Court used to consider group boycotts under the per se rule. Northern Pacific R.R. Co., 356 U.S. at 5. But, in Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co., 472 U.S. 284, 86 L.Ed.2d 202, 105 S.Ct. 2613 (1985), and FTC v. Indiana Federation of Dentists, 476 U.S. 447, 90 L.Ed.2d 445, 106 S.Ct. 2009 (1986), the Court again backed off:
 
 
 28
 the category of restraints classed as group boycotts is not to be expanded indiscriminately, and the per se approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor. Moreover, we have been slow to ... extend per se analysis to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.
 
 
 29
 Id. at 458-59 (citations omitted).
 
 
 30
 It would be difficult to think of a situation less appropriate for per se analysis than the case at hand. A medical staff's termination of one doctor's staff privileges could not have a significant adverse effect on competition, if the termination was not motivated by anti-competitive intent. Moreover, to classify the actions of the Hospital and Medical Staff in terminating Moss' privileges as a group boycott would lead to the absurd result that every action taken by the hospital requiring approval of the medical staff constitutes a group boycott. This is a rule of reason case.
 
 
 31
 Since Moss is unable to point to any evidence tending to suggest that defendants acted to further anti-competitive goals, the district court's order must be affirmed.
 
 
 32
 III. Intentional Interference with Contract Claims
 
 
 33
 Plaintiff's state law intentional interference with contract allegations are three-fold. First, plaintiff alleges that defendants Ravi and Sood interfered with his exclusive contract to provide radiology services by encouraging Casa Grande to terminate the contract. Second, plaintiff claims that the defendants interfered with his ability to practice radiology by making the hospital unavailable to him, presumably by refusing to grant privileges after the contract was terminated. Third, plaintiff asserts that the defendants interfered with "other contractual relations of Dr. Moss to provide radiology services in the Casa Grande area."
 
 
 34
 The district court dismissed the third aspect of plaintiff's allegations on the ground that he had failed to provide any instances of such "other" interference. Plaintiff does not contest this ruling, so we proceed to analyze plaintiff's arguments as they relate to the first two allegations of interference.
 
 
 35
 A. Interference with Exclusive Services Contract
 
 
 36
 Plaintiff alleges that the defendants intentionally interfered with his contract to provide radiology services at Hoemako Hospital. Although the amended complaint does not name the specific defendants, the claim appears to be directed against Ravi and Sood. Moss claims that after he had "blown the whistle" about the TLA procedure, Ravi and Sood complained to the hospital administration that plaintiff was not being cooperative in performing the TLA's. Later, Dr. Ravi initiated a physical altercation with plaintiff, after which Dr. Ravi demanded that he be terminated.
 
 
 37
 The district court dismissed plaintiff's claim of intentional interference with his exclusive services contract against Ravi and Sood on Arizona statute of limitations grounds. A two year limitations period applies to the interference with contract claims. Ariz.Rev.Stat.Ann. § 12-542; Clark v. AiResearch Mfg. Co. of Arizona, 138 Ariz. 240, 673 P.2d 984, 987 (Ct.App.1983).
 
 
 38
 Plaintiff's amended complaint, which added defendants Ravi and Sood, was filed on May 9, 1985. Dr. Moss received notice in February 1983 that his contract would be terminated, but was not actually terminated until May 12, 1983. He maintains that until May 12, 1983 there remained the chance that his contract would be renewed, and that the elements of his claim for intentional interference with contract had not accrued.
 
 
 39
 In this case, Arizona law governs when the cause of action for interference with contract accrues. See Daniels v. Fesco Division of Cities Service Co., 733 F.2d 622 (9th Cir.1984). No Arizona case resolves whether a cause of action for interference with an employment contract accrues on the date of notice of termination, or actual date of termination. However, Daniels, which interprets California law, is closely analogous.
 
 
 40
 In Daniels, plaintiff appealed the district court's dismissal of his wrongful discharge claim on statute of limitations grounds where plaintiff filed suit more than two years after notice of termination, but less than two years after termination. This court was unable to find a relevant California case, and sought to apply the rule that the California courts would follow given a similar situation. Accordingly, it turned to federal labor law, since California courts have turned to federal labor law in developing state labor law. Id. at 623. The Daniels court held that "[f]ederal case law supports the position that an employer's liability for wrongful discharge commences upon notice of the employee's termination even though the employee continues to serve the employer after receipt of the notice." Id.
 
 
 41
 Daniels presents a nearly identical factual situation, and provides the proper framework for filling the gap in Arizona law. We can see no reason not to apply the holding in Daniels to a claim for intentional interference with contract as well as to a claim for wrongful discharge. The district court was therefore correct in granting judgment in favor of defendants Ravi and Sood on plaintiff's first interference with contract claim.
 
 
 42
 B. Interference with Practice at Case Grande
 
 
 43
 Plaintiff's final intentional interference allegation is that defendants interfered with his ability to practice radiology by making Hoemako Hospital unavailable to him. At oral argument we ascertained that this claim is based upon the failure of Ravi and Sood (and the Medical Staff as a whole) to support or approve his application for privileges post-termination.
 
 
 44
 The district court held that plaintiff had failed to note any instances of business lost as a result of his inability to practice at Hoemako, and granted summary judgment in favor of defendants. Plaintiff argues that the district court's focus was too narrow, and that he should not have to show the loss of any particular patient to prove damage. Instead, he points to the cessation of a steady influx of patients from the hospital, and loss of the place to practice medicine which he had enjoyed under the terms of the contract.
 
 
 45
 Plaintiff bases this allegation on post-termination conduct. Under Arizona law, an element of the tort of interference with contract is "the existence of valid contractual relationship or business expectancy." Antwerp Diamond Exchange v. Better Business Bureau, 130 Ariz. 523, 637 P.2d 733, 740 (1981). Since plaintiff cannot allege the terminated exclusive services contract as the basis of a valid business expectancy, he must rely on the general expectancy of an influx of patients, which he argues would come from his admission to the Medical Staff. This, of course, cannot be an "expectancy," but only a hope, and cannot support the interference action. Cf. Marmis v. Solot, 117 Ariz. 499, 573 P.2d 899, 902 (Ct.App.1977).
 
 IV. Wrongful Discharge Claim
 
 46
 Moss argues that Arizona public policy bars his termination because he "blew the whistle," and refused to assist in the performance of an allegedly dangerous surgical procedure known as a translumbar aortography. Although Moss brought his claim for wrongful discharge against all the defendants, the claims against Ravi and Sood are barred by the two-year statute of limitations, as discussed in the previous section. We therefore consider only the claim against Case Grande.
 
 
 47
 In Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 710 P.2d 1025 (1985), the Arizona Supreme Court explicitly adopted the public-policy exception to the at-will termination rule. Specifically, the Court held that termination for failure to participate in "mooning," a possibly criminal offense could give rise to liability. 710 P.2d at 1044. More generally, it held that public policy can be contained in statutory and constitutional law, as well as in judicial decisions, although not all such pronouncements will provide a basis for a wrongful discharge claim. Id. at 1033. It noted that criminal statutes would provide the clearest basis for determining public policy. Id. at 1035.
 
 
 48
 The Wagenseller court emphasized, however, that where the interest involved is merely private or proprietary, the public policy exception will not apply. Id. at 1034. To illustrate that proposition, it cited Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980), in which the New Jersey Supreme Court held that a cause of action for wrongful discharge could not be based on a doctor's refusal to conduct saccharin research, since she had failed to articulate a clear public policy that had been violated. Wagenseller quoted the following passage from Pierce:
 
 
 49
 Chaos would result if a single doctor engaged in research were allowed to determine, according to his or her individual conscience, whether a project should continue. An employee does not have a right to continued employment when he or she refuses to conduct research simply because it would contravene his or her personal morals. An employee at will who refuses to work in answer to a call of conscience should recognize that other employees and their employer might heed a different call.
 
 
 50
 Wagenseller, 710 P.2d at 1034 (quoting Pierce, 417 A.2d at 514).
 
 
 51
 In Wagner v. City of Globe, 150 Ariz. 82, 722 P.2d 250 (1986), the Arizona Supreme Court went one step further and extended the tort of wrongful discharge to "whistle-blowing activity":
 
 
 52
 We believe that whistleblowing activity which serves a public purpose should be protected. So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged. We recognize that there is a tension between the obvious societal benefits in having employees with access to information expose activities which may be illegal or which may jeopardize health and safety, and accepted concepts of employee loyalty. [cite omitted]
 
 
 53
 722 P.2d at 257.
 
 
 54
 Wagenseller and Wagner are somewhat inconsistent, in that Wagenseller emphasizes that the public policy must be clearly stated, while Wagner suggests that a decision which seeks to further the public good, by exposing "unsafe practices," will be protected. Plaintiff places great weight on the Wagner court's liberal language in this respect. But Wagner still places an emphasis on public policy "embodied in the law." Id. at 258. And Wagner reemphasizes that the public policy must truly be public, rather than merely private or proprietary. Id. at 256. Indeed, the Arizona appellate courts have echoed the continuing validity of Wagenseller's limitation of public policy to matters involving "a singularly public purpose." Norman v. Recreation Centers of Sun City, 156 Ariz. 425, 752 P.2d 514, 517 (Ct.App.1988) (refusing to extend public policy cause of action to cover dismissal where director who fired plaintiff allegedly acted in contravention of fiduciary duties).
 
 
 55
 Moss relies on the Arizona peer review immunity statutes as expressing a public policy in favor of sound medical care. Ariz.Rev.Stat.Ann. § 36-445, et seq. He also relies on statutes which protect whistle-blowing activities by state employees. Ariz.Rev.Stat.Ann. § 38-532. There is some question as to whether plaintiff properly raised these arguments below, but the court accepts as true plaintiff's assertion that Arizona public policy favors sound medical care. It would be difficult to argue otherwise.
 
 
 56
 In support of his argument in favor of the broad formulation of Arizona's public policy doctrine, plaintiff invites the Court to follow California's lead in Dabbs v. Cardiopulmonary Management Services, 188 Cal.App.3d 1437, 234 Cal.Rptr. 129 (1987). In Dabbs, the court held that the plaintiff stated a cause of action for wrongful termination when she alleged that she was discharged in retaliation for refusing to work under conditions she believed to be dangerous to the health and safety of patients. 234 Cal.Rptr. at 133.
 
 
 57
 The Court does not accept appellants' broad formulation of Arizona's public policy exception to the at-will employment doctrine. Although this Circuit is not unwilling to expand state law in diversity cases, it has noted its reluctance to do so prematurely. See Torres v. Goodyear Tire & Rubber Co., Inc., 867 F.2d 1234, 1238 (9th Cir.1989). Not only would plaintiff's formulation constitute a significant extension of existing Arizona law, we believe that Arizona law is inconsistent with such an approach.
 
 
 58
 Plaintiff's interpretation would result in precisely the sort of chaos described in Pierce. A hospital would find it nearly impossible to make employment decisions relating to medical personnel. A doctor, for example, could halt the performance of an operation that he or she alone believed to be dangerous, merely by refusing to assist in the operation. If the hospital chose to fire that doctor, it would risk a jury verdict finding the procedure to be dangerous, and holding it liable for wrongful discharge. Such second guessing would stultify the operation of hospitals. A narrower interpretation is necessary, and warranted by the language of Wagenseller. The question must be whether Arizona maintains a clearly stated policy against TLA's.
 
 
 59
 Moss has not presented specific Arizona authority regarding the TLA procedure. The only evidence on the record is the opinion of plaintiff Moss that the TLA procedure is dangerous and archaic, his reference to a treatise which states that other procedures are preferred, his testimony that the procedure is no longer used in the United Kingdom, and the decision of the Arizona Medical Liability Review Board essentially clearing defendant Dr. Ravi of charges that he was negligent in using the TLA procedure. Such evidence does not establish a clear Arizona public policy against the use of the TLA procedure. At most it points to a disagreement among physicians about the desirability of the procedure.
 
 
 60
 Our legal holding is not to be taken as a legal evaluation of this or any other medical procedure, as to which there may be a legitimate dispute in the medical community. As stated above, our holding focuses on the legal question as to whether Arizona has held that this medical procedure violates Arizona public policy.
 
 V. Section 1983 Claim
 
 61
 Plaintiff alleges that the defendants acted under color of state law to deny his First Amendment right to protest substandard medical procedures, and his right to practice radiology, in violation of 42 U.S.C. § 1983. The district court granted summary judgment in favor of defendants on the ground that plaintiff had failed to produce sufficient evidence of state action. The facts surrounding the state action element of the § 1983 claim are largely undisputed.
 
 
 62
 Plaintiff alleges that the actions of defendants constitute state action since (1) Hoemako Hospital was initially built with state funds by Hospital District No. 1 of Pinal County, (2) Arizona law required the Hospital District to lease the hospital to a non-profit association, Casa Grande Valley Community Cooperative Hospital Association, and regulated the terms of the lease to some extent financially, (3) when the Hospital District conveyed Hoemako outright to Casa Grande in 1982, Case Grande agreed to the conditions that it would begin construction on a new larger hospital within two years, and would operate Hoemako in the meantime, (4) members of the Hospital District board now sit on the board of Casa Grande, and (5) the Hospital District issued public bonds, the proceeds of which will go to refinance the new medical center, with revenues from the new medical center satisfying the bond. Plaintiff also asserts that the conveyance of Hoemako to Casa Grande in 1982 violated Arizona law. The court will not delve into the merits of this claim, however, since plaintiff does not dispute that the conveyance was in fact made.
 
 
 63
 The district court held that after the conveyance of Hoemako in 1982, the Hospital District has "disinsinuated itself out of a position of some interdependence with Casa Grande Community Hospital Association," so that no interdependence or evidence of benefits flowing between the two entities could be found to support a finding of state action. Memorandum Order of June 3, 1986.
 
 
 64
 There is no "precise formula" for discerning state action: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 6 L.Ed.2d 45, 81 S.Ct. 856 (1961). The ultimate issue is whether the alleged infringement of federal rights is "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 73 L.Ed.2d 482, 102 S.Ct. 2744 (1982). The Supreme Court has articulated a number of factors and tests in aid of this determination: (1) the public function test, (2) the state compulsion test, (3) the nexus test and (4) the joint action test. Id. at 939. These tests to some extent overlap, and there is no need to pigeonhole the analysis into one test. See id. (whether the alternative tests are "actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation need not be resolved here.").
 
 
 65
 Nevertheless, the parties focus on the nexus, or "symbiotic relationship" test developed in Burton. The Court in Burton found state action where a restaurant located in a public owned parking garage, leased from the State, discriminated against blacks. Burton, 365 U.S. at 725. The requisite interdependence was further supported by the fact that the restaurant, and therefore the state, would profit financially from the ability to discriminate. Id. at 724.
 
 
 66
 In Rendell-Baker v. Kohn, 457 U.S. 830, 73 L.Ed.2d 418, 102 S.Ct. 2764 (1982), and Blum v. Yaretsky, 457 U.S. 991, 73 L.Ed.2d 534, 102 S.Ct. 2777 (1982), the Court considered two cases with factual similarities to the case at hand. In Rendell-Baker, the Court held that a privately operated school receiving considerable public funding and under significant state regulation could not be considered a state actor for purposes of wrongful discharge claims, since the "decisions to discharge ... were not compelled or even influenced by any state regulation." Rendell-Baker, 457 U.S. at 841. In Blum, the Court found that a private nursing home, depending almost entirely on the State for funds, was not a state actor since "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004.
 
 
 67
 Plaintiff argues that Halet v. Wend Investment Co., 672 F.2d 1305 (9th Cir.1982), the most recent Ninth Circuit "nexus" case, supports his claim. In Halet, this court reversed the district court's dismissal on state action grounds where plaintiff alleged, among other things, that: (1) the County owned the land leased to defendant, and had acquired and prepared it using state and federal funds, (2) the purchase of the land was part of a large redevelopment program, (3) the County leased the land for the benefit of the public to provide housing, (4) the lease prohibited discrimination, (5) the County oversaw development and approved all plans, (6) the County controlled the use and purposes of the apartments as well as rent charged, and (7) a percentage of rent went to the County. Id. at 1310. This court held that the above allegations, if proved, would place the County and the defendant in a Burton type position of interdependence. Id.
 
 
 68
 In the case at bench, plaintiff relies heavily on the fact that the State originated Hoemako Hospital. However, the State leased Hoemako to a private non-profit association, and eventually conveyed it to Casa Grande in 1982. After 1982 the State helped Casa Grande financially, but the Court's decision in Rendell-Baker and Blum state that government subsidies will not confer state action. Plaintiff has not shown interdependence to the extent present in Halet, where the State exerted actual control over development of the land, prohibited certain leasing practices, and received a percentage of the rents charged. Plaintiff has presented no evidence leading to the conclusion that the State in any way participated in or condoned the termination of his contract. See San Francisco Arts & Athletics v. U.S.O.C., 483 U.S. 522, 542-47, 97 L.Ed.2d 427, 107 S.Ct. 2971 (1987).
 
 
 69
 Finally, as to the four Hospital District Board members serving on the Casa Grande Board, plaintiff has not suggested that they serve on the Casa Grande Board to effectuate governmental policy. See Aasum v. Good Samaritan Hospital, 542 F.2d 792, 794-95 (9th Cir.1976) (Board members appointed by state bodies do not create state action unless appointed to effectuate governmental policy).
 
 
 70
 The district court's order granting summary judgment in defendants' favor on the § 1983 claim is affirmed.
 
 VI. Ravi and Sood's Cross-Appeal
 A. District Court's Refusal to Award Fees
 
 71
 Appellees Ravi and Sood cross-appeal the district court's denial of their request for attorney fees made under state and federal statutes. The factual basis for a fee award is subject to the "clearly erroneous" standard of review. Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n, 736 F.2d 441, 446 (8th Cir.), cert. denied, 469 U.S. 981, 83 L.Ed.2d 320, 105 S.Ct. 385 (1984). Discretionary fee awards are reversible only for abuse of discretion, Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69 (9th Cir.1975), cert. denied, 425 U.S. 951, 48 L.Ed.2d 195, 96 S.Ct. 1726 (1976), but the appellate court reviews the legal standard de novo. Rawlings v. Heckler, 725 F.2d 1192, 1194 (9th Cir.1984).
 
 
 72
 Plaintiff initially argues that the district court should not have considered the fee request, since it was untimely filed.
 
 1. Timeliness of the Fee Application
 
 73
 The district court dismissed all claims against Ravi and Sood by order of November 26, 1986. Judgment was entered December 22, 1986. Ravi and Sood filed the fee application on March 31, 1987, so the fee application came about 100 days after entry of judgment. The district court did not address the timeliness question, even though plaintiff raised the argument below. It simply went on to the merits of the application.
 
 
 74
 Although there is no specific time limit for application for fees, this Court has held that the district court should deny the application if the delay is unreasonable. Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 957 (9th Cir.1983). In Masalosalo, we affirmed the district court's finding that a 100 day delay from entry of final judgment was not unreasonable. Furthermore, in Metcalf v. Borba, 681 F.2d 1183 (9th Cir.1982), we suggested that a strong consideration is whether the delayed application "unfairly surprise[d] or prejudice[d] the affected party." Id. at 1187 (quoting White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 71 L.Ed.2d 325, 102 S.Ct. 1162 (1982)). Plaintiff does not contend that he was surprised or prejudiced.
 
 
 75
 The district court's apparent conclusion that the application was timely was not clearly erroneous.
 
 2. Arizona Fee Statutes
 
 76
 Ravi and Sood in part base their fee application on Ariz.Rev.Stat.Ann. § 12-341.01(A), which provides in relevant part:
 
 
 77
 In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees....
 
 
 78
 Arizona courts have interpreted the statute to allow fees for extracontractual claims which are "intrinsically related" to a contract, or which could not exist but for a breach of the contract. Marcus v. Fox, 150 Ariz. 333, 723 P.2d 682, 684 (1986).
 
 
 79
 In Associated Indemnity Corp. v. Warner, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985), the Arizona Supreme Court listed the following factors to consider with respect to a § 12-341.01(A) fee award:
 
 
 80
 1. The merits of the claim or defense presented by the unsuccessful party.
 
 
 81
 2. The litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result.
 
 
 82
 3. Assessing fees against the unsuccessful party would cause an extreme hardship.
 
 
 83
 4. The successful party did not prevail with respect to all of the relief sought.
 
 
 84
 Courts should also consider whether "the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." Id.
 
 
 85
 The district court declined to award fees on the grounds that the claims were not totally devoid of merit, defendant was relatively better able to absorb the fees, and for fear that a $72,000 fee award would discourage meritorious wrongful discharge claims. The district court was persuaded by the fact that defendants were insured, and were therefore much better equipped to bear the expense.
 
 
 86
 Ravi and Sood contend that the district court erred in giving weight to the relative wealth of the parties. Since the Arizona Supreme Court has adopted the collateral source rule, they argue, the district court may not deny a request for fees on the ground that the party requesting fees is represented by an insurer. See Michael v. Cole, 122 Ariz. 450, 595 P.2d 995, 997 (1979). However, in Catalina Foothills Ass'n v. White, 132 Ariz. 427, 646 P.2d 312, 313 (Ct.App.1982), the court addressed the specific issue at hand, and stated that:
 
 
 87
 We do not hold that the trial court cannot properly consider such fact, i.e., that someone else may be obligated to bear the expense, but we find the weight to be accorded that fact to be wholly within the trial court's discretion.
 
 
 88
 The trial court's decision is upheld as not an abuse of its discretion.
 
 
 89
 Ravi and Sood next argue that the district court should have examined the merits of each individual claim, as opposed to concluding merely that plaintiff's action was not devoid of merit as a whole. However, the merits of the particular claim or defense is just one factor to consider in deciding whether to award discretionary fees. The district court need not engage in the weighing process for each and every claim and defense asserted in an action.
 
 3. Fees for Frivolous Suit
 
 90
 Defendants also base their fee application on 42 U.S.C. § 1988, and Ariz.Rev.Stat.Ann. § 12-341-02(C), both of which allow fee awards for defending frivolous claims. 42 U.S.C. § 1988 provides that the district court may, in its discretion, award fees to the prevailing party in a civil rights case. The Court has held that fees may be awarded under this section against a plaintiff where the suit was "vexatious, frivolous, or brought to harass or embarrass the defendant." Hensley v. Eckerhart, 461 U.S. 424, 429 n. 2 (1983). Ariz.Rev.Stat.Ann. § 12-341-01(C) allows a fee recovery "upon clear and convincing evidence that the claim ... constitutes harassment, is groundless and not made in good faith...."
 
 
 91
 The district court denied the application on the ground that defendant had not presented sufficient grounds for a finding that the claims were frivolous, groundless, or not made in good faith.
 
 
 92
 This order is reviewable under the clearly erroneous standard. See Rosebrough Monument Co., 736 F.2d at 446. The denial of fees was not clearly erroneous.
 
 VII. Fees on Appeal
 
 93
 Defendants Ravi and Sood seek fees on appeal under Ariz.Rev.Stat.Ann. § 12-341-01(A), 42 U.S.C. § 1988. For the reasons discussed above, with respect to the district court's denial of fees, fees on appeal are denied.
 
 
 94
 AFFIRMED. We vacate the $200 sanction imposed against Terrence E. Harrison, attorney for defendant Casa Grande Community Hospital, for the late filing of the brief.
 
 
 95
 POOLE, Circuit Judge, Concurring;
 
 
 96
 I concur in the result.
 
 
 
 *
 Of the Central District of California
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3